# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**RICHARD SCHMIDT**          **CASE NO.  6:20-CV-00555 SEC P**

**VERSUS**          **JUDGE ROBERT R. SUMMERHAYS**

**HOWARD PRINCE**          **MAGISTRATE JUDGE WHITEHURST**

## REPORT AND RECOMMENDATION

Petitioner Richard Schmidt, a prisoner in the custody of Louisiana's Department of Corrections, filed a second petition for writ of habeas corpus, pursuant to 28 U.S.C. §2254, on May 1, 2020, through counsel.  Rec. Doc. 1.  An Answer was filed by the Respondent on March 21, 2021.  Rec. Doc. 21. Petitioner filed a Reply on March 30, 2021. Rec. Doc. 24.  The matter is now ripe for review on the merits.

Petitioner attacks his 1998 conviction for attempted second degree murder and the fifty (50) year sentence imposed thereon by the Fifteenth Judicial District Court, Lafayette Parish.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

## I.   Background

Petitioner Richard Schmidt, a medical doctor, was found guilty of deliberately injecting Janice Trahan, his former mistress, with blood from a patient infected with the human immunodeficiency virus (HIV).

### a.  Procedural Background

Petitioner first attacked the constitutionality of his conviction in this Court in 2005.  *See Schmidt v. Hubert*, Case No. 05-cv-2168 (W.D. La. Dec. 16. 2005).  The following procedural background was set forth by the Court:

> Petitioner was charged with attempted second degree murder. Before trial, petitioner filed for supervisory writs challenging various evidentiary rulings, including Daubert challenges to the admission of test results comparing the DNA of the HIV with which the victim was infected with the DNA of the HIV with which an HIV positive patient of Dr. Schmidt was infected. The writ application was denied by the Louisiana Third Circuit Court of Appeal and the Louisiana Supreme Court on July 29, 1997 and December 19, 1997, respectively. *State of Louisiana v. Richard J. Schmidt*, K-97-249 (La. App. 3 Cir. 7/29/1997), 699 So.2d 448; *State of Louisiana v. Richard J. Schmidt*, 97- KK-2220 (La. 12/19/1997), 706 So.2d 451. Following trial by jury, on October 23, 1998, petitioner was found guilty as charged. He was sentenced to serve fifty years in the custody of the DOC.
>
> Petitioner appealed his conviction and sentence to the Louisiana Third Circuit Court of Appeal presenting seven assignments of error, including that the evidence was insufficient to support petitioner's conviction and that the trial court erred in admitting expert testimony of the DNA test methodology used by the State's expert to compare the human immunodeficiency virus taken from an HIV patient with the victim's, in violation of the criteria set forth in Daubert.

On July 26, 2000, petitioner's conviction and sentence were affirmed. *State of Louisiana v. Richard J. Schmidt*, 99-1412 (La. App. 3 Cir. 7/26/2000), 771 So.2d 131, *rehearing denied*, (9/27/2000). Petitioner's application for writs of certiorari and/or review was denied by the Louisiana Supreme Court on September 28, 2001. *State of Louisiana v. Richard J. Schmidt*, 2000-K-2950 (La. 9/28/2001), 798 So.2d 105. Petitioner's subsequent application for writs to the United States Supreme Court was denied on March 4, 2002. *Schmidt v. Louisiana*, 535 U.S. 905, 122 S.Ct. 1205, 152 L.Ed.2d 143 (2002).

On September 27, 2002, petitioner filed an application for post-conviction relief in the Fifteenth Judicial District Court, which included claims that the prosecution withheld critical exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). That court denied relief on November 8, 2004. Petitioner's writ application to the Louisiana Third Circuit Court of Appeal was denied on March 30, 2005 in an unpublished order under Docket Number KW-05-00041. His writ application in the Louisiana Supreme Court was denied on December 16, 2005. *State of Louisiana v. Richard J. Schmidt*, 2005- KP-1118 (La. App. 12/16/2005), 917 So.2d 1104. Petitioner's federal writ application was filed that same day, on December 16, 2005.

Petitioner contends that his conviction and sentence were obtained in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because: (1) The trial court improperly admitted expert evidence which failed to meet the standards of *Daubert v. Merrill Dow Pharmaceuticals, Inc*., 509 U.S. 579, 113 S.Ct. 2786 (1993); (2) The evidence was insufficient to convict under the standard announced in *Jackson v. Virginia*, 442 U.S. 307, 99 S.Ct. 2781 (1979); and, (3) The prosecution withheld critical exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), namely out-of-court statements of witness Dr. Meza and victim Janice Trahan and an immunity agreement with witness D. M.

*Schmidt v. Hubert, supra,* Rec. Doc. 20.

After a full review of the record, Magistrate Judge Hill recommended that Schmidt's petition be denied (*id*.) and Judge Haik dismissed the matter on October 3, 2008 (*id*. at Rec. Doc. 22).

Petitioner filed an appeal in the U.S. Fifth Circuit Court of Appeals, which was denied on May 27, 2010.  *Id*. at Rec. Doc. 30.

On May 1, 2020, Schmidt filed the instant petition attacking the constitutionality of his 1998 conviction, raising the following claims: (1) the State's use of phylogenetic analysis as proof of the direct relatedness of the HIV strains of Trahan and another of Schmidt's patients, whom the State posited was the source of the HIV virus used to infect Trahan, was a misapplication of unreliable, scientifically invalid, and highly prejudicial evidence that violated his due process rights;  and (2) the State's sponsorship of false, scientifically unreliable, and misleading evidence of the direct relatedness of the two strains of HIV as proof of Schmidt's intent to commit attempted second degree murder constituted prosecutorial misconduct.  Rec. Doc. 1.

As Schmidt is seeking to file a successive § 2254 application, he must first have obtained an order from the U.S. Fifth Circuit authorizing this Court to consider the application. 28 U.S.C. § 2244(b)(3)(A).  Petitioner sought this authorization and the Fifth Circuit ruled, as follows:

> Because Schmidt has previously challenged the admission of the disputed HIV evidence on due process grounds, his first proposed

4

claim will not be considered. See § 2244(b)(1). Regarding his prosecutorial misconduct claim, Schmidt has made a showing sufficient to warrant fuller exploration by the district court. *See In re Morris*, 328 F.3d 739, 740 (5th Cir. 2003). Accordingly, IT IS ORDERED that Schmidt's motion for authorization to file a successive § 2254 application is GRANTED. **The grant of authorization is tentative in that the district court must dismiss the application without reaching its merits if it determines that Schmidt has failed to satisfy the requirements for filing the motion. See § 2244(b)(4).**

*See* Rec. Doc. 1-4 (emphasis added).

## II.    Law and Analysis

### a.  Standard of Review - 28 U.S.C. § 2244(b)(4)

As noted above, the Fifth Circuit has granted Schmidt permission to file a successive petition for writ of habeas corpus. Under § 2244(b)(3)(C), the Fifth Circuit grants applications seeking leave to file a second or successive petition when, upon examining the petition and its supporting documents, "it appears reasonably likely that the application satisfies the stringent requirements for the filing of a second or successive [petition]." *See Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001) (quoting *Bennett v. United States*, 119 F.3d 468, 469-70 (7th Cir. 1997)). The required prima facie showing is "'simply a sufficient showing of possible merit to warrant a fuller exploration by the district court.'" *Id.* at 898-99 (quoting *Bennett*, 119 F.3d at 469).

The appellate court's grant of permission to file a successive petition, however, does not automatically entitle a petitioner to review of the merits of the

claims presented. Instead, a petitioner who files a successive federal habeas corpus petition must go through a second hurdle in the District Court before the merits of his petition can be considered. *Id*. at 899-900 & n.16; see *Brown v. Lensing*, 171 F.3d 1031 (5th Cir. 1999). As noted in the Fifth Circuit's authorization order, under § 2244(b)(4), the District Court is directed to "dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."

For the District Court's review under § 2244(b)(4), a second or successive petition for writ of habeas corpus is only appropriate in two circumstances: (1) where the petitioner shows that the claim relies on a new rule of constitutional law made retroactive on collateral review; and (2) where the petitioner shows that the claim is based on a newly discovered factual predicate that could not have been discovered earlier with due diligence and the newly discovered evidence establishes by clear and convincing evidence that, but for the constitutional error, no reasonable jury could have found petitioner guilty. See also 28 U.S.C. § 2244(b)(2)(A), (B)(i)-(ii). Schmidt asserts that "new, material, non-cumulative evidence in the form of newly obtained affidavits, predicated on the advances of scientific testing, methodology, and analysis, far behind those available at trial," warrant review of his claims brought in this successive petition.  Doc. 1-1, p. 2.

As part of its review, not only must the District Court determine compliance with § 2244(b)(2) and (4), it should assure that the successive petition also meets another gate-keeping provision of timeliness found in § 2244(d)(1). *See Rollins v. Cain*, 470 F. App'x 276, 277 (5th Cir. 2012); *In re Henderson*, 462 F.3d 413, 417 (5th Cir. 2006).  Determining whether a successive petition complied with the one-year statute of limitations outlined in § 2244(d) is not a concern of the court of appeals in addressing a request for authorization § 2244(b). The Fifth Circuit has recognized that, when considering motions pursuant to § 2244(b), it does not have a developed record and cannot determine whether the one-year statute of limitations should be statutorily or equitably tolled, especially considering that the successive petition has not yet been filed. *See, e.g., In re Henderson*, 462 F.3d at 417. As a result, a determination of compliance with § 2244(d) is left to this Court as a threshold matter.

### b.  Timeliness and Exhaustion

The affidavits relied upon by Schmidt in support of his claim were authored by Gerald H. Learn, PhD and William Gallaher, Ph.D, and signed on May 26, 2017 and April 11, 2017, respectively.  Docs. 1-2 & 1-3.  The respondent argues that petitioner was in possession of the affidavits nearly three years prior to filing the instant petition and, therefore, petitioner's claims should be dismissed as untimely.

Furthermore, the respondent contends that as Schmidt has failed to exhaust his claim of prosecutorial misconduct in the state courts, his petition should be denied.

Petitioner argues that the "actual innocence" exception to the rules regarding time limits apply in this case and permit consideration of his petition. The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which the petitioner may pass whether the impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations." *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013). Thus, if petitioner were to make a colorable showing of actual innocence, he could pass through the gateway and thereby avoid the operation of the statute of limitations. Tenable actual-innocence gateway claims are rare; a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *Id., citing Schlup v. Delo,* 513 U.S. 298, 329, (1995); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met). The question thus becomes whether Petitioner's affidavits from Learn and Gallaher amount to "new reliable evidence" sufficient to meet the demanding *Schlup* standard. The undersigned finds that they do.

The respondent's case rested on an alleged link between the August 4, 1994 blood draw from HIV positive patient McClelland and a purportedly contaminated August 4, 1994 B-12 injection of Trahan. According to petitioner, the State took

careful and exhaustive pains to persuade the jury that Trahan's prior sexual conduct could not have originated the infection, that she was not employed in a "high risk" medical field that posed the possibility of accidental exposure, and that she was not an intravenous drug user. Doc. 1-3, p. 13.  The State did not claim that petitioner was HIV-positive and they posed no alternative form of transmittal other than the August 4, 1994 injection. *Id*.  At trial, the State attempted to persuade jurors that an HIV contaminant was furtively placed inside of the August 4, 1994 B-12 shot and that this HIV strain was removed from the blood pull from McClelland earlier that same day.  *Id*.  This evidence was based upon a methodology called forensic phylogenetic analysis. In its simplest incarnation, "phylogenetics" uses genetic information to compare the degree of difference of the HIV DNA of pairs of individuals in a group and arrange the pairs on a "phylogenetic tree" based on those degrees of difference. Thus, an association of two individuals indicates only that they are less different than others in that specific group, not that they are in any way directly related or not unrelated themselves. As the State asserted in closing argument:

> And I would finally and respectfully submit to you that there is another piece of evidence that tend [sic] to corroborate this conclusion, and that's is [sic], I hate to say it, but the scientific evidence in this case is a controversial piece of evidence. This is the first criminal case in the country to use this evidence in a criminal case. There's been much talk about contamination, about selection and necessity of control samples, of forensic standards for forensic laboratories versus academic laboratories. You know, the bottom

line is that this evidence, this scientific evidence is like any evidence that you will consider. You either believe it or not. You hear it. You evaluate it. You decide what worth it has to you, and you decide whether it's something you believe or you don't. But I would respectfully submit to you that you heard from, admittedly, renowned, the most renowned expert in the field of phylogenetic analysis, Dr. David Hillis. Scientist of this area differ. And we saw the differing opinions of different experts. But he is the man who created the tools of phylogenetic analysis, as Dr. Korber said. It was his testimony that the HIV virus of Donald McClelland and the HIV virus of Janice Trahan Allen were closely related. And no one—no one—now, there was debate over what significant close relatedness means. That's the debate. But what nobody could say, what no expert could say is that the virus of Donald McClelland and the virus of Janice Trahan Allen are not related. No one can say that. That would have been very significant. Dr. Korber said that. The fact of the matter is, the viruses are related.

Doc. 21-33, pp. 18-20.

Schmidt argues that the State's closing remarks are critical for two reasons: First, Dr. David Hillis, the State's expert in the field of phylogenetic analysis, has since discredited the very position he espoused at petitioner's trial, namely that phylogenetic analysis can determine "direct relatedness" (see 2011 *Nature*[1]). Doc. 1-1, p. 14. Second, petitioner relies on the affidavits of Drs. Gallaher and Learn to argue that the State's assertion that "no expert could say…the virus of Donald McClelland and the virus of Janice Trahan Allen are not related" is no longer accurate. *Id*. In the affidavits of Drs. Gallaher and Learn, both experts in the fields

---

[1] David Hillis' May 19, 2011 co-authored an article entitled "Guidelines for HIV in court cases."

of microbiology, virology, molecular genetics and evolutionary biology, both affiants conclude not only that the phylogenetic testing used at petitioner's trial was suspect at the time, but that it has since been rejected by the majority of the scientific community and, further, that the evidence available at trial, if analyzed today using the modern, generally accepted, and highly-credited "molecular clock75 " based techniques would actually produce exculpatory evidence, excluding to a reasonable degree of scientific certainty McClelland as the source of Trahan's HIV infection and thereby eradicating an essential element of the case against petitioner. *Id*. at p. 15, *citing* affidavits of Drs. William Richard Gallaher and Gerald H. Learn, petitioner's Exhibits 1 & 2, docs. 1-2 & 1-3.  Relying on these affidavits, petitioner contends that new scientific literature, advanced knowledge about HIV and the HIV genome, and cutting-edge computing software available since his trial have now confirmed that the phylogenetic testing used in his trial—the first ever in a U.S. courtroom—was incorrigibly unscientific and fundamentally flawed resulting in the miscarriage of justice. *Id*.

Schmidt avers that the affidavits of Dr. Learn and Dr. Gallaher establish that "the scientific tide has advanced so considerably that the evidence of the connectivity between McClelland and Trahan is not only muddied—as it was at trial—but positively exculpatory, decoupling the relatedness between the HIV-infected patient and the HIV-infected complaining witness to a factor of one (1) in

13.5 million, roughly the same odds as giving birth to identical quadruplets." *Id*. at p. 17.  To pass through the *Schlup* gateway, a petitioner's actual innocence claim must be based on reliable evidence not presented at trial and affirmatively demonstrating innocence.  *Calderon v. Thompson*, 523 U.S. 538, 539 (1998).

For purposes of this case, several features of the *Schlup* standard bear emphasis. First, although to be credible a gateway claim requires new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial, the habeas court's analysis is not limited to such evidence.  *House v. Bell*, 547 U.S. 518, 537 (2006).  The undersigned finds that Schmidt has presented some new reliable evidence.  Thus, the court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors.  *Id*.

Second, the *Schlup* standard is demanding and permits review only in the "'extraordinary'" case.  *Schlup,* 513 U.S. at 327. At the same time, the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence. *Id*.  A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt--or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

12

Finally, as the *Schlup* decision explains, the gateway actual-innocence standard is "by no means equivalent to the standard of *Jackson v. Virginia*, 443 U.S. 307 (1979)," which governs claims of insufficient evidence. *Id*., at 330. When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict. Because a *Schlup* claim involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record. *Id*. If new evidence so requires, this may include consideration of "the credibility of the witnesses presented at trial." *Id*.

The Court concludes that Schmidt has satisfied the gateway standard set forth in *Schlup* and will now address the merits of his claim, of prosecutorial misconduct.

## III.   Merits- Prosecutorial Misconduct

The sole issue, on the merits, before this Court is the allegation that the State knowingly deceived the trial court and the jury, subverted the countervailing scientific authority, and misapplied phylogenetic analysis to establish "direct relatedness" between Trahan's and McClelland's HIV DNA which it does not even test for.  Doc. 1-1, p. 27.   The respondent contends that there is no evidence to suggest that the prosecution knew that the HIV evidence was unreliable, scientifically invalid, false or misleading.  Doc. 21-1, p. 6.

13

"Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). Actions and statements of a prosecutor may violate due process in two ways. "They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)). Federal courts apply "a two-step analysis to charges of prosecutorial misconduct." *United States v. Duffaut*, 314 F.3d 203, 210 (5th Cir. 2002). The courts first decide whether the prosecutor's actions were improper and, if so, they then determine whether the actions "prejudiced the defendant's substantive rights." *Id.*

When a petitioner asserts a generic due process violation, and it is determined that the prosecutor's actions were improper, the Court asks whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *Donnelly* 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a

reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted).

In this case, petitioner has failed to show that the prosecution acted in an improper manner.  First, any advances in the phylogenetic testing of HIV infections cannot be considered, as the State could not, as noted by the respondent, see into the future in 1998.  Additionally, the trial the trial court conducted a two-day long *Daubert* hearing to determine the admissibility of the scientific evidence to be presented by both the state and the petitioner in the trial of this matter. At that hearing, five different experts testified (including the aforementioned Dr. Gallaher).  After hearing all of the testimony and reviewing evidence, trial court ruled that the methodology known as phylogenetic analysis of phylogenetic tree analysis had been tested, widely published, and had a low rate of error and was generally accepted in pertinent scientific community, as well as each protocol, technique, and practice used by the laboratory in question. The court further ruled that testimony would be allowed regarding the HIV DNA analysis performed and that such analysis suggested that the HIV isolates derived from Donald McClelland and Janice Trahan were closely related.  At that time, petitioner made pre-trial writ applications to the Third Circuit Court of Appeal, questioning the findings of fact and conclusions of

law reached by the trial court.  The Third Circuit upheld the trial court's ruling and found that the standards of *Daubert* had been complied with.

Accordingly, it cannot be argued that the prosecutor in this case knowingly sponsored false scientific evidence and, considering the lack of evidence, the prosecutorial misconduct claim should be denied.

### III. Conclusion and Recommendation

For the foregoing reasons,

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the**

16

**District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

In Chambers, Lafayette, Louisiana, March 21, 2022.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**